UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BIO MANAGEMENT NORTHWEST INC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> WASHINGTON BIO SERVICES, et al., <br><br> Defendants. | CASE NO. C20-670 MJP <br><br> ORDER ON MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendants' Motion for Summary Judgment. (Dkt. No. 43.) Having reviewed the Motion, Plaintiffs' Opposition (Dkt. No. 46), the Reply (Dkt. No. 51), and all supporting materials, the Court DENIES the Motion.

**BACKGROUND**

Bio Management Northwest Inc. and its owners John Stavros and Gordon Wilson filed suit against a former employee, Michael Lerner, and his business, Washington Bio Services. (Complaint ¶¶ 9-10, 14, 17.) The two companies are competitors and provide cleaning services for biohazards, such as crime scenes. (Id. ¶ 11; Declaration of John Stavros ¶ 5 (Dkt. No. 47);

Declaration of Michael Lerner ¶ 5 (Dkt. No. 44).) Plaintiffs allege that Michael Lerner deliberately misappropriated Bio Management's logo and has attempted to lure away its customers. (Compl. ¶¶ 12-13.) Plaintiffs pursue four claims: (1) trademark infringement under the Lanham Act, 15 U.S.C. § 1114; (2) unfair competition under the Lanham Act, 15 U.S.C. § 1125; (3) common law trademark infringement and unfair competition; and (4) Consumer Protection Act violations.

According to Plaintiffs, the rival logos appear as follows:

 

(Pl. Opp. at 10; compare Exs. B-E to Stavros Decl. with Ex. A to the Declaration of Teresa Scavotto (Dkt. No. 50).) Plaintiffs obtained a design plus words trademark for their logo on December 3, 2019. (Compl. ¶ 12.) Plaintiffs aver they first used the mark on April 8, 2017 at a poker tournament that Bio Management sponsored and have since used it continuously. (Stavros Decl. ¶¶ 9-10.) Defendants have not trademarked their logo.

Defendants do not necessarily dispute that they used the logo identified above. Instead, Michael Lerner avers that he relied on assurances from his father, Aaron, that it could be used for his new business, Washington Bio. (Lerner Decl. ¶ 6.) Like Michael, Aaron—the father—had also been an employee of Bio Management, and it was there that he made the logo. (Id.) But according to Michael, Aaron believed the logo was his personal property because Bio Management did not pay him (Aaron) for the work. (Id.) Bio Management disputes this, and Plaintiff Stavros asserts that he "never discussed or intended for Aaron to own the mark or to have any ownership interest in the mark" and that Aaron created the mark in late 2016 "solely at [Stavros'] direction." (Stavros Decl. ¶¶ 7-8.) According to one of Michael's employees, Teresa

1  Scavotto, Michael opposed the use of the logo while his father insisted that they use it. (Scavotto
2  Decl. ¶ 10.) Regardless, Michael admits that he personally "took the original principal of the
3  marking, modified it to make it unique and distinctive from other markings, and began using it . .
4  . in January 2019." (Lerner Decl. ¶ 6.) And both Michael and Aaron were working as employees
5  and for the benefit of Defendant Washington Bio with regard to the alleged misconduct.

6  **ANALYSIS**

7  **A.**    **Legal Standard**

8   Summary judgment is proper "if the pleadings, the discovery and disclosure materials on
9  file, and any affidavits show that there is no genuine issue as to any material fact and that the
10 movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether
11 an issue of fact exists, the Court must view all evidence in the light most favorable to the
12 nonmoving party and draw all reasonable inferences in that party's favor. <u>Anderson v. Liberty
13 Lobby, Inc.</u>, 477 U.S. 242, 248-50 (1986). A genuine issue of material fact exists where there is
14 sufficient evidence for a reasonable factfinder to find for the nonmoving party. <u>Id.</u> at 248. The
15 moving party bears the initial burden of showing that there is no evidence which supports an
16 element essential to the nonmovant's claim. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).
17 Once the movant has met this burden, the nonmoving party then must show that there is a
18 genuine issue for trial. <u>Anderson</u>, 477 U.S. at 250. If the nonmoving party fails to establish the
19 existence of a genuine issue of material fact, "the moving party is entitled to judgment as a
20 matter of law." <u>Celotex</u>, 477 U.S. at 323-24.

21 **B.**    **Plaintiffs' Trademark Claims**

22  The Parties agree that all of Plaintiffs' trademark claims require proof of a "likelihood of
23 confusion," and Defendants seek summary judgment on the theory that Plaintiffs have not and

24

ORDER ON MOTION FOR SUMMARY JUDGMENT - 3

1  cannot make that showing. As set forth below, the Court finds that disputed issues of material
2  fact as to the likelihood of confusion preclude summary judgment on the three trademark claims.

3      **1.**    **Legal Framework**

4      Plaintiffs' trademark infringement, false designation, and common law trademark claims
5  all require the plaintiff to demonstrate a valid mark and the likelihood of consumer confusion.
6  See Network Automation, Inc. v. Advanced Sys. Concepts, Inc., 638 F.3d 1137, 1144 (9th Cir.
7  2011) ("To prevail on a claim of trademark infringement under the Lanham Act, 15 U.S.C. §
8  1114, a party must prove: (1) that it has a protectible ownership interest in the mark; and (2) that
9  the defendant's use of the mark is likely to cause consumer confusion." (citation and quotation
10 omitted)); Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp., 174 F.3d 1036, 1046 (9th Cir.
11 1999) (holding that § 43 Lanham Act false designation claims track the elements of trademark
12 infringement claims); Seattle Endeavors, Inc. v. Mastro, 123 Wn.2d 339, 345 (1994) ("Under
13 Washington law, a plaintiff in a trade name infringement case must establish the defendant has
14 infringed on a distinctive feature of his name in a manner that tends to confuse the two
15 businesses in the public mind.")

16     The court examines the "likelihood of confusion" through the Sleekcraft factors, which
17 are "proxy for consumer confusion, not a rote checklist." Network Automation, 638 F.3d at
18 1145; see David N. Brown, Inc. v. Act Now Plumbing, LLC, 170 Wn. App. 1045, 2012 WL
19 4335922, at *2 (2012) (unpublished) (applying the Sleekcraft factors to assess likelihood of
20 confusion for a common law trademark infringement claim); Safeworks, LLC v. Teupen Am.,
21 LLC, 717 F. Supp. 2d 1181, 1192 (W.D. Wash. 2010) (same). The eight "relevant" factors for
22 determining whether consumers would likely be confused by related goods: "[1] strength of the
23 mark; [2] proximity of the goods; [3] similarity of the marks; [4] evidence of actual confusion;
24

ORDER ON MOTION FOR SUMMARY JUDGMENT - 4

[5] marketing channels used; [6] type of goods and the degree of care likely to be exercised by the purchaser; [7] defendant's intent in selecting the mark; and [8] likelihood of expansion of the product lines." AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979).

"These factors are neither exhaustive nor dispositive." Ironhawk Techs., Inc. v. Dropbox, Inc., 2 F.4th 1150, 1160 (9th Cir. 2021). "The presence or absence of a particular factor does not necessarily drive the determination of a likelihood of confusion." E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1290 (9th Cir. 1992). "The factors should be considered together to determine, under the totality of the circumstances, whether a likelihood of confusion exists." Ironhawk, 2 F.4th at 1161. And "[w]here conflicting facts render it unclear whether a likelihood of confusion exists, summary judgment is inappropriate." Id. at 1161-62.

The Court reviews the Sleekcraft factors as follows:

    **a.    Strength of the mark**

"Marks are classified into one of five categories of increasing distinctiveness that warrant increasing protection: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful." Ironhawk, 2 F.4th at 1162 (quotation and citation omitted). "On summary judgment . . . the question is whether a reasonable jury could find that [Plaintiffs'] mark is at least suggestive. Id. "Descriptive marks define a particular characteristic of the product in a way that does not require any imagination[.]" JL Beverage Co., LLC v. Jim Beam Brands Co., 828 F.3d 1098, 1107 (9th Cir. 2016). Suggestive marks "suggest a product's features and require consumers to exercise some imagination to associate the suggestive mark with the product." Id. When "the Patent and Trademark Office issues a registration without requiring proof of secondary meaning, the federal registration provides prima facie evidence that the . . . mark is inherently distinctive (i.e., at least suggestive)." Ironhawk, 2 F.4th at 1162.

1    Because Plaintiffs' mark has been registered without proof of secondary meaning, it is

2    considered inherently distinctive. See Ironhawk, 2 F.4th at 1162. But even it was not registered,

3    the mark is at least suggestive. The mark uses a shield with a biohazard symbol together with the

4    company name, which conveys some description of the general category of services and goods,

5    but it requires the consumer to exercise some imagination as to the precise nature of the company

6    even with the company's name. Defendants argue in reply that the mark is merely descriptive

7    because one can find shields with biohazard logos on the internet, generally. This is not the

8    relevant inquiry. Whether one can locate shields with biohazard symbols on them does not

9    answer the question of whether this specific logo and accompanying words are suggestive or

10   merely descriptive. This factor favors Plaintiffs.

        **b.**      **Relatedness of the Services**

"The standard for deciding whether the parties' goods or services are "related" is whether customers are likely to associate the two product lines." Surfvivor Media, Inc. v. Survivor Prods., 406 F.3d 625, 633 (9th Cir. 2005) (citation omitted). The Court also "consider[s] whether the buying public could reasonably conclude that the products came from the same source." Id.

Washington Bio provides cleanup services for private and governmental clients for crime scenes, deaths, hoarder houses, campsites, and drug houses. (Lerner Decl. ¶¶ 3-5.) Bio Management similarly "provide[s] biohazard remediation services and specializes in trauma scene cleanup." (Stavros Decl. ¶ 5.) The Court finds a strong relatedness of the services that both entities provide, which weighs in favor of the likelihood of confusion.

        **c.**      **Similarity of the marks**

The evidence of the similarity of the marks is strong. Both logos use a shield with a biohazard symbol and the accompanying words appear to use the same or similar fonts and colors. The similarity of the marks is hardly surprising given Lerner's admission that he "took

the original principal of the marking [that Plaintiff uses], modified it to make it unique and distinctive from other markings, and began using it." (Lerner Decl. ¶ 6.) While Lerner may have made some changes, they appear principally to have affected only the name. This factor weighs in favor of confusion.

### d. Evidence of actual confusion

To make a showing of actual confusion, Plaintiffs rely on an email sent by Trudy Pearson of the City of Issaquah in which she appears to express some confusion between Washington Bio and Bio Management. (See Stavros Decl. Ex. M (Dkt. No. 47-1 at 42-48).) Defendants correctly ask the Court to strike this email because it contains inadmissible hearsay. Pearson has not filed a declaration and her statement is being offered to prove that she was actually confused. This is inadmissible hearsay and the Court STRIKES it. See Fed. R. Evid. 801(c), 802. Similarly, the Court STRIKES Plaintiff Stavros' statement that Pearson was confused, as he has no basis to testify as to her state of mind. See id.; Stavros Decl. ¶ 22. Having failed to provide admissible evidence of actual confusion, Plaintiffs have failed to show any actual confusion. This weighs in Defendants' favor.

### e. Marketing channels used

"Convergent marketing channels increase the likelihood of confusion." Sleekcraft, 599 F.2d at 353. This factor weighs in Plaintiffs' favor given that both entities market their services to similar consumers—primarily government and municipal entities. This overlapping focus between the businesses shows a convergence that favors Plaintiffs' claim of confusion.

      **f.**      **Type of goods and the degree of care likely to be exercised by the purchaser**

"In analyzing the degree of care that a consumer might exercise in purchasing the parties' goods, the question is whether a 'reasonably prudent consumer' would take the time to distinguish between the two product lines." Surfvivor, 406 F.3d at 631.

Both Parties argue their government clients are discerning. (Pls. Opp. at 12; Defs. Reply at 6-7.) Plaintiffs again cite the email exchange between Michael Lerner and Trudy Pearson of the City of Issaquah to support their position. But without admissible statements from Pearson, the Court is unable to determine whether Pearson was actually confused despite being discerning. This factor appears to slightly favor Defendants, because discerning clients should, theoretically be able to distinguish as between the two entities. But given the overlapping nature of the company names and the people involved (both Lerners had once worked for Bio Management), this factor favors Defendants only minimally.

      **g.**      **Defendant's intent in selecting the mark**

"When the alleged infringer knowingly adopts a mark similar to another's, we must presume that the public will be deceived." Sleekcraft, 599 F.2d at 354.

Construing the facts in Plaintiffs' favor there is evidence that Michael Lerner knowingly selected Bio Management's mark to help his business directly compete with Bio Management. As Lerner admits, he worked for Bio Management "doing similar work" and then after he was laid off, he started his own competing company. (Lerner Decl. ¶ 6.) He knowingly took the logo his father provided to him that read "Bio Management Northwest" and then changed it to his own company's name. (Id.) And Teresa Scavotto, who worked for Lerner, states that Michael was opposed to using the logo, but was overridden by his father. (Decl. of Teresa Scavotto ¶ 10 (Dkt. No. 50).) A fact finder could consider this as evidence that Michael knowingly used the

logo notwithstanding his own reservations. The Court finds evidence that Defendants knowingly adopted Plaintiffs' mark, which favors Plaintiffs' position.

### h. Likelihood of expansion of the product lines

When the parties "already compete to a significant extent," this factor is "relatively unimportant" to the analysis of confusion. Brookfield, 174 F.3d at 1055. The parties agree this factor is neutral given that they are competitors.

\*   \*   \*

Having considered the record through the lens of the Sleekcraft factors, the Court finds that there is sufficient evidence of a likelihood of confusion to prevents a grant of summary judgment in Defendants' favor. The factfinder should be given an opportunity to weigh the evidence to determine the trademark and false designation claims. The Court DENIES the Motion as to these claims.

### C. Consumer Protection Act

Defendants move for summary judgment on Plaintiffs' CPA claim, arguing that the claim cannot proceed absent a showing of the likelihood of confusion. Defendants are correct that trademark infringement can serve as the basis for a CPA claim by potentially satisfying the "public interest" element of the claim. See Seattle Endeavors, 123 Wn.2d at 350. But given the genuine dispute of material fact as to the likelihood of confusion, the Court cannot grant summary judgment in Defendants' favor on the CPA claim as they have requested. The Court therefore DENIES the Motion as to this claim.

### D. Motion to Strike

In their reply, Defendants ask the Court to strike a number of statements contained in the declarations Plaintiffs filed with their opposition. Aside from the concerns about hearsay in the email from Trudy Pearson and Stavros' declaration, discussed above, the Court DENIES the

remainder of the motion to strike as MOOT because it was not necessary to consider these disputed statements to resolve the merits of Defendants' Motion.

## CONCLUSION

Defendants' attempt to obtain summary judgment on all four claims falls short. Plaintiffs have provided sufficient evidence to demonstrate that there are genuine issues of material fact in dispute as to the likelihood of confusion. This undermines Defendants' Motion, which the Court DENIES. And aside from emails from Pearson and Stavros' declaration that the Court strikes as hearsay, the Court otherwise DENIES as MOOT Defendants' motion to strike.

The clerk is ordered to provide copies of this order to all counsel.

Dated September 23, 2021.

Marsha J. Pechman
United States Senior District Judge